IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| ANTHONY L. CARTER, SR. | § | |
|    TDCJ-CID #694133 | § | |
| | § | |
| v. | § | C.A. NO. C-06-516 |
| | § | |
| SERGEANT BENAVIDES, ET AL. | § | |

## ORDER RETAINING CASE

This is a civil rights action filed by a state prisoner pursuant to 42 U.S.C. § 1983.

Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996), any prisoner action brought under federal law must be dismissed if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. See 42 U.S.C. § 1997e(c); 28 U.S.C. §§ 1915(e)(2), 1915A. Plaintiff's action is subject to screening regardless whether he prepays the entire filing fee or proceeds as a pauper. Ruiz v. United States, 160 F.3d 273, 274 (5th Cir. 1998) (per curiam); Martin v. Scott, 156 F.3d 578, 580 (5th Cir. 1998) (per curiam). Plaintiff's *pro se* complaint must be read indulgently, Haines v. Kerner, 404 U.S. 519, 520 (1972) (per curiam), and his allegations must be accepted as true, unless they are clearly irrational or wholly incredible, Denton v. Hernandez, 504 U.S. 25, 33 (1992). Applying these standards, plaintiff's claims alleging deliberate indifference to his serious medical needs are retained on the Court's docket, and service is ordered on defendants.

## I. JURISDICTION

The Court has federal question jurisdiction over this civil rights action pursuant to 28 U.S.C. § 1331. Plaintiff consented to proceed before a magistrate judge, (D.E. 10), and by order of reassignment entered January 31, 2007, this case was reassigned to a United States Magistrate Judge to conduct all further proceedings, including entry of final judgment (D.E. 16).

## II. FACTUAL ALLEGATIONS

Plaintiff is an inmate in the Texas Department of Criminal Justice ("TDCJ"), Criminal Institutions Division, and is currently incarcerated at the Stevenson Unit in Cuero, Texas. His complaint, however, concerns the medical care he received while at the McConnell Unit in Beeville, Texas and at Christus Spohn Hospital in Beeville. He is suing the following McConnell Unit employees: Sergeant Benavides; Sergeant Rachel Barrios; Officer Damon Wilson; and Officer John Doe. He is also suing two Christus Spohn employees, Doctor Mario Quintanilla and Nurse Jane Doe, as well as the hospital itself. The following allegations were made in plaintiff's original complaint and at the February 9, 2007 Spears[1] hearing:

On December 20, 2004, plaintiff became sick and began vomiting blood. His cell mate called for help, but no correctional officers came around on that shift. At approximately 10:30 p.m., plaintiff's cell mate was able to get the attention of Officer Wilson, who looked in plaintiff's cell and observed him lying on the floor in a pool of his own blood. Officer Wilson stated that he would inform Sergeant Benavides about plaintiff's condition.

Officer Wilson did not return, and Sergeant Benavides did not come to see plaintiff. He continued to vomit blood. On recount, Officer John Doe came by plaintiff's cell. He reported that Sergeant Benavides knew about his condition and that she said to tell plaintiff there was nothing she could do and to file a sick call request. Plaintiff continued to lay on the floor and vomit blood, and began going in and out of consciousness. He laid on his cell floor all night.

At shift change the next morning, Officer Burns observed plaintiff who told him about his condition. Officer Burns stated that he would go report the situation to Sergeant Barrios. As

---

[1] Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985); see also Eason v. Holt, 73 F.3d 600, 603 (5th Cir. 1996) (stating that testimony given at a Spears hearing is incorporated into the pleadings).

he left, the cell door was ajar, and plaintiff crawled out of his cell. Some offenders saw plaintiff lying in the run, and Offender Brown picked him up and carried him to the H-pod deep space floor where he vomited more blood. Sergeant Barrios arrived and questioned how plaintiff came to the deep space. She told him that he must walk to the infirmary to be treated, despite the fact that he was lying in a pool of blood and going in and out of consciousness. The other offenders protested this order. About twenty minutes later, Nurse Richer arrived with a wheelchair. However, he called to the infirmary and requested a stretcher, noting that plaintiff must have internal bleeding. Plaintiff was then taken by stretcher to the McConnell Unit emergency room.

In the emergency room, plaintiff was seen by PA Woodcroft who started an IV. He then told Nurse Richer to call for an ambulance to transport plaintiff to the hospital in Beeville.

Plaintiff was taken by ambulance to Beeville hospital emergency room where he was admitted. (D.E. 1, Ex. A) (Beeville hospital identification bracelet). In the emergency room, he was started on oxygen and an IV. Despite how weak he was, defendant Nurse Jane Doe ordered plaintiff to stand up, not to fall on her, and to switch from one bed to another. She then left the emergency room, and upon her return, she removed plaintiff's oxygen mask and IV, before ordering the TDCJ escorts to take plaintiff back to the McConnell Unit. She further explained that there was nothing wrong with him. Plaintiff was never seen or examined by a doctor; however, Dr. Mario Quintanilla signed all the paperwork regarding him, including his discharge papers. Plaintiff was taken back to the McConnell Unit.

Back at the McConnell Unit, plaintiff was placed in the infirmary. PA Woodcroft called a second ambulance, and plaintiff was then transported to John Sealy Hospital in Galveston, where he was admitted. (D.E. 1, Ex. B) (Galveston hospital identification bracelet). Plaintiff was given blood, and the next morning he was told by medical staff that, if he had not received

3

the transfusion, he might have died from all the blood he had lost the previous day.  He was diagnosed with bleeding ulcers.  He stayed at the Galveston hospital for seven days for further testing and evaluation.  Thereafter, he went to another unit for further recovery for three days, before returning to the McConnell Unit.

After he was back at the McConnell Unit, Nurse Richer asked plaintiff why he had not sought medical care earlier.  He told him that he had in fact tried the entire night of December 21, 2004.  Nurse Richer stated that there was no record of any officer calling the infirmary.  He reported the incident to Major Fernandez, and he instructed plaintiff to file a grievance.

On January 10, 2005, plaintiff filed a Step 1 grievance complaining about these events.  It was denied on the basis that plaintiff had not notified security of his need for medical attention.  (D.E. 1, Ex. D).  Plaintiff filed a Step 2 grievance, which was also denied.  (D.E. 1, Ex. E).

Plaintiff filed this lawsuit on November 21, 2006.  He seeks compensatory and punitive damages.

### III.  DISCUSSION

**A.     Legal Standard For A Section 1983 Claim.**

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law.  West v. Atkins, 487 U.S. 42, 48 (1988) (citations omitted); accord Biliski v. Harborth, 55 F.3d 160, 162 (5th Cir. 1995) (per curiam).  An action may be dismissed for failure to state a claim when it is clear that the prisoner can prove no set of facts in support of his claim entitling him to relief.  Oliver v. Scott, 276 F.3d 736, 740 (5th Cir. 2002) (citation omitted).  The complaint must be liberally construed in favor of the prisoner and the truth of all pleaded facts must be assumed.  Id. (citation omitted).

### B.     Deliberate Indifference To Serious Medical Needs Claim.

In order to state a § 1983 claim for denial of adequate medical treatment, a prisoner must allege the officials acted with deliberate indifference to serious medical needs. See Estelle v. Gamble, 429 U.S. 97, 105 (1976); Wilson v. Seiter, 501 U.S. 294, 303 (1991); Varnado v. Lynaugh, 920 F.2d 320, 321 (5th Cir. 1991) (per curiam) (citation omitted). Dismissal is appropriate only if plaintiff's likelihood of success is extremely slight or that there is no basis in law or fact for the claim asserted. See Varnado, 920 F.2d at 321 (citation omitted). "Deliberate indifference is an extremely high standard to meet." Domino v. Texas Dep't of Criminal Justice, 239 F.3d 752, 756 (5th Cir. 2001).

Deliberate indifference encompasses more than mere negligence on the part of prison officials. It requires that prison officials be both aware of specific facts from which the inference could be drawn that a serious medical need exists and then they, perceiving the risk, must deliberately fail to act. Farmer v. Brennan, 511 U.S. 825, 837 (1994). Furthermore, "negligent medical care does not constitute a valid section 1983 claim." Mendoza v. Lynaugh, 989 F.2d 191, 195 (5th Cir. 1993); see also Graves v. Hampton, 1 F.3d 315, 319 (5th Cir. 1993) ("It is firmly established that negligent or mistaken medical treatment or judgment does not implicate the eighth amendment and does not provide a basis for a civil rights claim."). As long as prison medical personnel exercise professional medical judgment, their behavior will not violate a prisoner's constitutional rights. See Youngberg v. Romeo, 457 U.S. 307, 322-23 (1982).

### 1.     McConnell Unit Defendants.

Taking his allegations as true, plaintiff has successfully alleged deliberate indifference claims against Sergeant Benavides, Sergeant Barrios, Officer Wilson, and Officer John Doe.

According to plaintiff, Officer Wilson personally observed him covered in blood, moaning in pain, vomiting, and pleading for help, but did nothing to assist him in getting medical aid. He merely reported plaintiff's condition to Sergeant Benavides. He did not take plaintiff to the infirmary, or call for medical help.

Sergeant Benavides was informed that plaintiff was sick, but she never came to plaintiff's cell, or investigated the matter in any means. Her only response was for plaintiff to file a sick call request, which plaintiff was in no condition to do.

Officer John Doe, too, observed firsthand, plaintiff vomiting and covered in blood, but he simply reported that Sergeant Benavides said to file a sick call request. He did not contact medical or take plaintiff to the infirmary.

Sergeant Barrios observed plaintiff covered in blood, vomiting, and going in and out of consciousness, yet she ordered that he walk to the infirmary. In fact, plaintiff was so ill that he needed to be taken to the infirmary by stretcher.

The facts as alleged by plaintiff suggest that each of the McConnell Unit defendants were aware of a serious medical need, but failed to act. Accordingly, the Court retains plaintiff's deliberate indifference to serious medical needs claims against these defendants.

  **2.**  **Medical Provider Defendants.**

To recover under 42 U.S.C. § 1983, a plaintiff must prove that he has been deprived of a right secured by the Constitution and the law of the United States, and that the persons depriving him of this right acted under color of state law. 42 U.S.C. § 1983; West, 487 U.S. at 48. The United States Supreme Court has held that a physician who is under contract with the state to provide medical services to inmates at a *state-prison* hospital even on a part-time basis acts "under color of state law" within the meaning of § 1983. West, 487 U.S. at 50-51.

In this case, the Beeville Hospital is a *private*, not a state, hospital. However, at his Spears hearing, plaintiff testified that the TDCJ has a contract with it to provide medical services to inmates. If the TDCJ, in fact, contracted out certain services to it, then the employees are state actors for purposes of § 1983 liability. See generally West, 487 U.S. at 55-56; Lemoine v. New Horizons Ranch & Ctr., Inc., 990 F. Supp. 498, 502 (N.D. Tex. 1998) (private physician who contracts with a private juvenile detention center that has a contract with the state is a state actor pursuant to § 1983). Thus, for purposes of § 1915 screening, plaintiff has stated a cause of action against Dr. Mario Quintanilla[2] and Nurse Jane Doe. Plaintiff's claims against these defendants will be retained.

### 3. The Beeville Hospital As A Defendant.

County hospitals are "persons" to which § 1983 applies. Frazier v. Bd. of Trs. of Nw. Miss. Reg'l Med. Ctr., 765 F.2d 1278, 1284 n.9 (5th Cir. 1985). However, the Beeville hospital is private. Nonetheless, if it is found to have a contract with the TDCJ to satisfy state action, plaintiff may be able to assert a § 1983 claim against it. Greco v. Orange Mem'l Hosp. Corp., 513 F.2d 873, 877 (5th Cir. 1975) (a private hospital is subject to § 1983 "if its activities are significantly affected with state involvement"); McIlwain v. Prince William Hosp., 774 F. Supp. 986, 989 (E.D. Va. 1991) (without a contract, "hospital's mere acceptance of a prison inmate for emergency care does not transform the hospital into a state actor"). For purposes of § 1915A screening, the Court finds that plaintiff has stated a claim against the hospital, and service shall be ordered on this defendant.

---

[2] According to hospital records, Dr. Quintanilla is no longer employed at the Beeville hospital. It appears that he is now practicing medicine in Lake Jackson, Texas.

## IV.  CONCLUSION

Plaintiff has stated a claim of deliberate indifference to his serious medical needs and the Court retains on the docket his claims against the named defendants.

ORDERED this 1st day of March 2007.

```
                                    _____
                                    BRIAN  L. OWSLEY
                                    UNITED STATES MAGISTRATE JUDGE
```